Pfeifer, J.,
concurring in part and dissenting in part.
{¶ 45} I concur in the portion of the majority opinion that addresses the validity of the leases. They are not perpetual. I dissent from everything else. Over the years, I have been generous with criticism of various legal analyses of my colleagues; spirited dissent is a well-understood, constructive part of deciding important matters in a court of last resort. I have been more circumspect with respect to our trial courts, which often have to render quick decisions on complex matters without the benefit of colleagues to help them thread the various legal needles. Today I take aim below as well.
{¶ 46} This case is an all-too-real modern Jamdyce and Jamdyce. The attorney for Claugus Family Farm, L.P. (“Claugus”) ably and successfully argued before this court that the Beck Energy leases were valid. He did so while sitting at the same table as an attorney who argued that the Beck Energy leases were perpetual and therefore invalid. Meanwhile, Beck Energy’s attorney argued that Claugus’s interests, as an unnamed class member, were skillfully and properly represented by the Hupps’ attorney, who was arguing directly contrary to Claugus’s expressed interests. Because a class was certified and the leases tolled, Claugus estimates that it will lose hundreds of thousands of dollars based on losing the lease it negotiated with Gulfport. We have no way of knowing the total extent of the economic carnage wrought on the 700 or so other landowners in Monroe County and elsewhere in southeastern Ohio that are affected by this decision. The ultimate irony, which you might think would only happen in a fictional case, is that the Hupps, the lead plaintiffs in the class-action case, are no longer parties to the suit. It’s as if the Hupps’ attorney, who made the ridiculous argument that the leases were perpetual, made that argument just so he could initiate a Civ.R. 23(B)(2) suit, thereby adding significant numbers to his oil-and-gas client base. It is as if the Hupps and Beck Energy were part of a scheme to extend the Beck leases by subterfuge — by making a specious argument about the validity of the leases and tolling them — instead of extending the leases the old-fashioned way, by working the land that is the subject of the leases. Beck Energy becomes the undisputed winner of this case, whether by hook or by crook, because it assigned the disputed leases to XTO Energy for $84 million. Claugus and other unnamed parties seeking relief from this court were told below that they should have intervened in the Seventh District — and that remains the best option they have — to have intervened when they did not have notice. It is laughable. Jamdyce indeed.
*190 {¶ 47} “Unorthodox” does not adequately describe what happened in the courts below. The trial court certified the class after deciding, on summary judgment, that the Beck Energy leases were invalid. Not to be outdone, on September 26, 2013, the court of appeals, instead of decertifying the class as requested by Beck Energy, tolled all Beck Energy leases for both the named and unnamed plaintiffs as of October 1, 2012. This reversed the trial court, which though it unreasonably certified the class, at least had the sense to realize that parties with notice of the suit should be treated differently from those without notice. The court of appeals then ruled in Hupp v. Beck Energy Corp., 2014-Ohio-4255, 20 N.E.3d 732, ¶ 76 (7th Dist.), determining that the Beck Energy leases are not perpetual, but nevertheless continued the tolling for both named and unnamed plaintiffs until such date as this court accepted jurisdiction. It is as if everyone associated with this case is determined to extend the leases for the benefit of Beck Energy and to the detriment of Claugus.
{¶ 48} Moreover, the requirements of Civ.R. 23 on joinder are not met. The class is not so large that joinder of all parties is impracticable. The questions of law are not. common to all parties. At least one party, Claugus, believed its lease with Beck Energy was valid and was prepared to abide by its terms. As noted above, the class argued before this court that the Beck Energy leases were perpetual and, therefore, invalid. How can the class properly protect Claugus and other unnamed, unnotified parties who may believe in the validity of their own leases? Given that, how can the class be certified? This opposing point of view by unnamed proposed plaintiffs, who lacked notice, means that Civ.R. 23(A)(2), (3), and (4) could not possibly be met. Unfortunately, the trial court did not even inquire into this issue. Furthermore, it is clear that the certification of the class resulted in the denial of due process to Claugus (no notice and no opportunity to opt out) and adversely affected the property and contract rights of Claugus and other similarly situated unnamed class members. On this basis alone, this court should grant the writs and relief sought by Claugus.
{¶ 49} A postscript in keeping with the trials and tribulations of Jamdyce and Jamdyce. When the attorney for the named, but no longer present, plaintiffs filed this action in September 2011, West Texas Intermediate oil was $85.62 per barrel. When tolling began in October 2012, the price was $89.52; when the trial court granted class certification, it was $95.30; when the Seventh District issued the tolling order in September 2013, it was $106.31; in September 2014, when the Seventh District decided the Hupp case, oil was at $93.35; when this court accepted jurisdiction of the appeal in January 2015, oil stood at $47.60; and today as we decide this case, the price is hovering below $30 per barrel. See http:// www.indexmundi.com/commodities/?commodity=crude-oil-west-texas-interme diate & months=120 (accessed Jan. 19, 2016). Natural-gas prices have also crashed during the course of this litigation. See http://www.indexmundi.com/ *191 commodities/?commodity=natural-gas&months=120 (accessed Jan. 19, 2016). Although the true cost of production for eastern Ohio shale oil and gas is unknowable by this court, it is generally regarded to be significantly above current market prices.
Critchfield, Critchfield & Johnston, Ltd., Daniel H. Plumly, and Andrew P. Lycans, for relator in case No. 2014-0423.
Michael DeWine, Attorney General, and Sarah Pierce and Tiffany Carwile, Assistant Attorneys General, for respondents in case No. 2014-0423.
Slater & Zurz, L.L.P., Richard V. Zurz Jr., and Mark A. Ropchock, for appellants in case No. 2014-1933.
Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Scott M. Zurakowski, William G. Williams, Gregory W. Watts, and Aletha M. Carver, for appellee in case No. 2014-1933 and intervening respondent in case No. 2014-0423.
Reed Smith, L.L.P., and Kevin C. Abbott; and Brouse McDowell, L.P.A., and Clair E. Dickinson, in support of respondents in case No. 2014-0423 and urging affirmance in case No. 2014-1933 for amicus curiae XTO Energy, Inc.
Vorys, Sater, Seymour & Pease, L.L.P., John K. Keller, and Timothy B. McGranor in support of respondents in case No. 2014-0423 and urging affirmance *192 in case No. 2014-1933 for amici curiae Ohio Oil and Gas Association, Enervest, Ltd., Artex Oil Company, Artex Energz Group, L.L.C., Sierra Buckeye, L.L.C., Eclipse Resources Corporation, and Hilcorp Energy Company.
*191 {¶ 50} Who are the winners in this case? As noted, the undisputed winner is Beck Energy, which presciently unloaded its leases to XTO Energy for $89 million at a time when prices were significantly higher than they are now. It is possible that XTO Energy will be able to develop some of the leased properties, whether to block competitors or because of proximity to previously installed pipelines. For many of the unnamed class plaintiffs, the future is cloudy at best, though a winning scenario is difficult to imagine. We know that none of them will be able, based on today’s market prices, to lease their property to Gulfport or other oil and gas producers for the $7,000 per acre that Claugus had negotiated. And we know that they won’t be able to do that because of a specious argument made by a lawyer in Akron, Ohio, who took a swing for the bleachers on behalf of over 700 property owners without their knowledge or consent.
{¶ 51} We all have regrets, usually because of something we did wrong, something we could and should have done differently. In this case, the landowner families affected regret that the courts of Ohio did not protect them from the machinations of a lawyer who did not even represent them. They will drink their morning coffee, dreaming of what might have been, of what this court could and should have done.
O’Donnell, J., concurs in the foregoing opinion.
*192 Burleson, L.L.P., Kevin L. Colosimo, Kristin M. McCormish, Michael Vennum, and Daniel P. Craig, in support of intervening respondent in case No. 2014-0423.